## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* MORRIS MARX, APPELLANT.

*Oleomargarine act —* 1884, *chap.* 202 — *it is constitutional.*

A conviction of the defendant of a violation of section 6 of chapter 202 of 1884, entitled "An act to prevent deception in the sales of dairy products," was affirmed by the General Term upon the grounds:

*First.* That the act prohibits the manufacture of oleomargarine as an article of food, without regard to any intent on the part of the manufacturer to sell the same as butter, and that the decision of the General Term in the Second Department so construing the act and holding it to be constitutional, should be followed. (BRADY, J., and DAVIS, P. J.)

*Second.* That the act prohibited only the manufacture of oleomargarine designed to be sold as butter, and that the evidence justified a verdict that the defendant in this case manufactured it with that intent. (DANIELS, J.)

APPEAL from a judgment of the Court of General Sessions, entered upon the verdict of a jury convicting the defendant of a violation of section 6 of chapter 202 of the Laws of 1884, entitled "An act to prevent deception in the sales of dairy products."

*F. R. Coudert* and *Wheeler H. Peckham,* for the appellant.

*De Lancey Nicoll,* for the respondent.

BRADY, J.:

The appellant was convicted for selling an article in contravention of the prohibition contained in the following section of chapter 202 of the Laws of 1884:

SECTION 6. No person shall manufacture out of any oleaginous substance or substances, or any compound of the same other than that produced from unadulterated milk or of cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk or cream of the same, or shall sell or offer for sale the same as an article of food. * * * Whoever

violates the provisions of this section shall be guilty of a misdemeanor and be punished by a fine of not less than one hundred nor more than five hundred dollars, or not less than six months or more than one year's imprisonment, or by both such fine and imprisonment, for the first offense and by imprisonment for one year for each subsequent offense.

It was contended upon the trial that the act mentioned was unconstitutional and void, and being so no offense had been committed. The learned recorder presiding reluctantly expressed himself adversely to this proposition but felt bound by the decision of the General Term of the second district declaring the act to be constitutional. He was inclined to agree with Justice PRATT who dissented. (See *The People* v. *McGann*, 34 Hun, 358.) This case presents all the elements for the final adjudication of the mooted question, inasmuch as it is conceded that there was no intent by the appellant on the sale to defraud the purchaser by representing the article to be what it was not. In other words it was sold as oleomargarine, and because there is also proof in the case showing that it was made of pure fat and that upon analysis its constituent elements proved to be the same as those of dairy butter.

Indeed it was shown by Mr. Henry Morton, a professor of the science of technology at the Stevens Institute, Hoboken, New Jersey, that oleomargarine was first devised or invented in 1872 or 1873, during the Franco-Prussian war, by Professor Mege, a man of scientific attainments and much reputation, and who it was reported had been employed by the French Government to devise a substitute for butter. Mr. Morton also confirmed the testimony given on behalf of the people as to the elements of oleomargarine. He said " oleomargarine is a word used for two things. It is often used for the product obtained by the treatment of fats, by which there is gotten out from the fat a pure fatty substance having almost the identical elements of the fats existing in butter; and the word is also used to indicate the marketable article produced when that pure fatty substance is churned up with milk or cream and perhaps mixed with butter, so as to be in a condition of solid emulsion for use on the table. Now the oleomargarine before it is churned consists substantially of three fatty bodies, stearine, palmatine and oleine. These three substances are the only materials present in and

constituting the oleomargarine stock or oleomargarine oil, as it is called, prior to its manufacture into table butter. And those are three of the fats which exist in ordinary butter. There is present in ordinary dairy butter a fourth fatty substance, known as butyrine."

He also, in answer to a question, whether there was any difference between oleomargarine and oleomargarine butter, said, the former meant the pure fats and the latter the product, when some of that fat had been churned up with a certain amount of cream or the like, so that a certain amount of butyrine had been introduced and a little cheesy substance or curd which it gets from the milk. He said also that the only difference chemically speaking between oleomargarine butter and dairy butter, was that there was more butyrine in the latter. And further still that the former contained all the elements of the latter. Professor Chandler, who had been chemist of the board of health for many years, its president for many years and chairman of the sanitary committee for several years, also said that oleomargarine was manufactured in a very cleanly manner, more so than dairy butter, and that they were equally wholesome. Dr. George F. Morris, physician, surgeon and inspector of the board of health was also called by the appellant, but the learned district attorney then said "we do not propose to controvert this testimony. It is conceded that the witness will testify in substance as professors Morton and Chandler have on the subject on which they were examined," and this closed the testimony for the defense.

The question to be considered by the court of last resort is therefore squarely presented, and it is whether the legislature is gifted with the power to declare under any possible pretense that the sale of an article of merchandise made from pure and wholsome materials, and in itself harmless, pure and wholsome, and therefore not injurious, deleterious or dangerous to public health and combining the elements of an article of commerce not contraband but recognized, sold and protected, can be prohibited under pains and penalties, or at all. Such a sale, while it might excite the antagonism of dealers in dairy butter, and naturally, and arouse a spirit of opposition not easily quelled, would not, it would seem, either affect the public morals or the public health, and would not, therefore, invoke the intervention of legislative authority as to either of these elements. Accepting the statement of Professor Morton, the production of oleomargarine

was the result of scientific experiment and investigation, with a view to find a substitute for dairy butter, and not with an intention to create a substance in any respect injurious or less wholesome. It was not conceived in fraud or for mischievous purpose, and therefore the only harm its discovery and use could accomplish would be its sale as dairy butter, which it resembles in color and flavor. No one could doubt the propriety of any legislation designed to prevent this. No honest dealer would sell oleomargarine for dairy butter, but all tradesmen are unfortunately not honest, and hence the necessity of legislative action relative to a variety of transactions of daily life. A person seeking butter made at a dairy should not be imposed upon by receiving oleomargarine and *vice versa,* and hence the dealer should be bound to declare what either and both is if he sells both, or either if he sells but one. But without pursuing this subject further, which we do not feel at liberty to discuss, it is thought that uniformity in the laws promulgated by the several departments of the State should, if possible, prevail, leaving the parties concerned to their right to invite by appeal the determination of the court of last resort, and therefore the judgment pronounced by a majority of the justices of the General Term of the Second Department is accepted as controlling upon the question presented by the record, whatever views we may entertain and would express were the question new. If we held the law unconstitutional in this department, the sale of oleomargarine would be lawful, and no prosecutions under the act mentioned, in this county could well succeed, while in an adjoining department the sale would be unlawful and a prosecution warranted. The contemplation of this diversity invokes the necessity of concurrence and the decision of the court of last resort. For these reasons we affirm the conviction, with the suggestion that every facility should be granted the appellant for a speedy presentation of the point considered to the Court of Appeals.

DANIELS, J.:

Section 6 of chapter 202 of the Laws of 1884, was intended to prohibit the manufacture of any oleaginous substance or compound designed to take the place of butter or cheese, as butter, when not made from unadulterated milk or cream, and to prohibit the same

from being sold, or offered for sale, as that article of food. The act intended to be made criminal by this enactment is the manufacture of the prohibited article with the design that it shall take the place of butter or cheese manufactured from unadulterated milk or cream, or that it shall, when having been so manufactured be sold, or offered for sale, as that article of food. It is this design to deceive, when embodied in these acts, or either of them, which the law has rendered the subject of punishment. And that the design to sell the article so manufactured as butter existed in this case, was made reasonably clear by the evidence. It was in that design and act that the offense consisted. It was sufficiently charged. And it was within the province of the legislature to prohibit it and declare the violation of the prohibition to be a criminal offense.

The judgment accordingly should be affirmed.

DAVIS, P. J.;

If the Act under consideration is to be construed as one to prevent fraud and deception in selling oleomargarine as butter, and not as the article it really is, the Act could readily be upheld, but I think it is not just to the accused to hold upon the evidence that he was guilty of selling oleomargarine *as butter*, in any way that would or was intended to deceive the purchaser. The buyer bought oleomargarine, knowing what it was and that it was not butter, because he wanted that article as food, and because he could buy it cheaper than butter. There is nothing to show that it was in fact deleterious or hurtful as food, so that the purchaser who wanted it should be, for sanitary or police reasons, protected.against his own choice or taste.

The case ought to be regarded as a plain one, presenting a clear constitutional question touching the power of the legislature to prevent arbitrarily and absolutely, the manufacture and sale of a particular article of food which, when wholesome and pure, is not in anywise injurious to those who from cheapness, poverty or taste, prefer or are obliged to use it.

In short the question is to be considered just as it would be if butter, the product of pure and unadulterated milk or cream, were the thing prohibited to be made or sold by any person in the State.

Its merits would then be visible in a light as clear and distinct as a noonday sun to every one, except possibly a manufacturer or vendor of oleomargarine.

But as my brother BRADY has shown, this court sitting in another department has passed upon the validity of this law. Due respect for its adjudication requires us to accept that conclusion as correct, and to put this case, by affirmance, in a proper position for the final settlement of the question by the court of last resort.

I concur in the result for that purpose.

Judgment affirmed.